## FRANK S. RAWLAND, BY WALTER S. JOHNSON, GUARDIAN AD LITEM, v. C. G. SHEPPARD, M. D. STATE OF MINNESOTA, APPELLANT.

232 N. W. 2d 8.

July 18, 1975—No. 45300.

*John E. MacGibbon,* County Attorney, for appellant.

*C. Paul Jones,* State Public Defender, and *Mark W. Peterson,* Assistant State Public Defender, for respondent Rawland.

*Warren Spannaus,* Attorney General, *Thomas L. Fabel,* Deputy Attorney General, and *Michael R. Saeger,* Special Assistant Attorney General, for respondent Sheppard.

Heard before Otis, Peterson, Todd, MacLaughlin, and Yetka, JJ., and considered and decided by the court en banc.

OTIS, JUSTICE.

This is a proceeding brought by petitioner, Frank S. Rawland, under Minn. St. 631.19 to secure his parole from the Minnesota Security Hospital at St. Peter. The state appeals from an order of the District Court of Sherburne County denying its motion for dismissal and certifying as important and doubtful three questions pursuant to Rule 103.03(i), Rules of Civil Appellate Procedure. We affirm and remand to the district court for a decision on the merits.

Petitioner was tried and convicted of murder in the third de-

gree by the District Court of Sherburne County in the year 1969. On appeal to this court, we held that the evidence established as a matter of law that petitioner was not guilty by reason of insanity. State v. Rawland, 294 Minn. 17, 199 N. W. 2d 774 (1972). Accordingly, in September 1972, he was committed to the Minnesota Security Hospital as provided by Minn. St. 631.19. These proceedings were initiated by petitioner in December 1973 to secure his parole from the hospital.

That part of § 631.19 which governs release procedures is as follows:

"The person so acquitted shall be liberated from such hospital upon the order of the court committing him. There shall be first presented to the court the certificate, in writing, of the head of the hospital where such person is confined, certifying that in the opinion of such head of the hospital such person is improved sufficiently to be released and that no person will be endangered by his discharge.

"After receiving the recommendation contained in the certificate, if the court determines that such person has improved sufficiently to be released and that no person will be endangered by his discharge, the court shall order his release.

"If the head of the hospital fails or refuses to furnish such certificate at the request of the person committed, then such person may petition such court for his release, and hearing on the petition shall be had before the court upon and after service of such notice as the court shall direct.

"If, at such hearing, the evidence introduced convinces the court that no person will be endangered by his release on parole or discharge from such hospital, and a proper and suitable person is willing to take such committed person on parole, and to furnish a home for him and care for and support him, then the court may order the release of such confined person from such hospital on parole and for such time and upon such terms and conditions as the court may determine and order, and thereupon such person

shall be so released from such hospital and placed on parole or discharge with the person named by the court in its order."

Dr. C. G. Sheppard, medical director and head of the security hospital, was not able to certify to the court without qualification that in his opinion petitioner was improved sufficiently to be released and that no person would be endangered by his discharge. He did, however, certify as follows:

"That in his opinion as such Medical Director, Frank S. Rawland is improved sufficiently to be released from such hospital; and that no person will be endangered by his discharge, with these qualifications, if any:

"1. That he be released on parole or provisional discharge, and

"2. That he be required to continue with his medication for an indefinite period of time, and

"3. That the Medical Director of Minnesota Security Hospital receive a report by postcard following each injection of medication, and

"4. That said Frank S. Rawland be required to report to either the Veterans Hospital Outpatient Services, private psychiatrist or Mental Health Center for periodic examinations and reviews, and that copies of such periodic interviews be sent to the Court, County Attorney and Medical Director of Minnesota Security Hospital, and

"5. That the County Welfare Department of such County in which the aforementioned Frank S. Rawland resides, be required to also make periodic reports concerning his reaction to his environment, his general welfare and any other pertinent information.

"All of the above shall be required in an effort to be certain that everything is going along all right with Mr. Rawland; that he is indeed not endangering anyone, and that he is thereby meeting all requirements of both the court and Minnesota Security Hospital."

At the hearing in the district court petitioner waived his claim to an outright discharge and sought only a parole. At the conclusion of the hearing, the state moved the court to dismiss the petition. The court denied the motion and made the following finding:

"That the State of Minnesota moved to dismiss the remaining portion of the petition for the reason that it fails to state a claim upon which relief can be granted, because the relief sought by the petition, in light of the medical testimony adduced, is already in effect, in that petitioner is granted regular and extended home visits, under the medical supervision of the Minnesota Security Hospital, under the existing Order for Commitment, and that the medical requirements of petitioner's parole are so restrictive and so vital to the petitioner's ability to function outside the security hospital, that to write these limitations, restrictions and value judgments of the petitioner's mental condition that must be made from time to time, to insure to society the protection envisioned by the provisions of Minnesota Statute 631.19 into a parole or parole agreement would shift the responsibility for the petitioner's mental condition and the protection of society from the Minnesota Security Hospital to the Court, the Court having neither the technical knowledge required nor the facilities needed to render a nearly continuous and on going evaluation of the petitioner's mental condition as contemplated by the Motion."

In denying the motion to dismiss the petition, the district court entered the following order and memorandum and certified the following questions for review by this court:

"Upon the foregoing Findings and upon all the files and proceedings herein,

"It Is Hereby Ordered:

"1. That C. G. Sheppard, Medical Director of the Minnesota Security Hospital, be joined as a respondent herein.

"2.   That the part of the petition of the petitioner asking for an outright release or discharge is hereby denied.

"3.   As to the remaining part of the petition the motion by the State of Minnesota to dismiss for failure to state a claim upon which relief can be granted is denied.

"The Court in denying the motion to dismiss this part of the petition does hereby certify that the answers to questions presented by the motion of the State of Minnesota are important and doubtful.

### "QUESTION No. 1

"When a person has been committed pursuant to the provisions of Minnesota Statute 631.19 to the State Security Hospital and is certified as having homicidal tendencies, does the Medical Director of the Minnesota Security Hospital have authority to provide home visits, under medical supervision, without obtaining an order of the Court for such visitation?

### "QUESTION No. 2

"If the answer to Question No. 1 is yes, then, is there any limitation imposed by law upon the duration of visits permitted by the Medical Director of the Minnesota Security Hospital?

### "QUESTION No. 3

"Does the Court under Minnesota Statute 631.19 have authority to grant either a parole or a discharge when the Medical Director of the Minnesota Security Hospital cannot and will not certify that a patient in this circumstance is not dangerous to the public?

"4.   That the Order granting or denying the remainder of the petition shall be deferred pending resolution of the questions being herein certified as important and doubtful."

\*   \*   \*   \*   \*

### "MEMORANDUM

"What in effect is being sought in this proceeding by the petitioner is a parole. If the Medical Director of the Minnesota Security Hospital has authority to send a patient in these circumstances home for extended periods of home visitation without

any prior Order of the Court under 631.19, he then enjoys most of the benefits of 'parole' status. However, if he is given a parole by Court Order, his legal status then changes and he is entitled to a hearing prior to revocation of that parole status. The exigencies which may arise in regard to any particular patient who may have homicidal tendencies are, the Court believes, readily apparent. The ability of the Medical Director of the Institution to meet such exigencies, deal with unexpected problems or occurrences and to protect the patient against himself and the public against the patient would require immediate and direct action. It is, therefore, the opinion of the Court in this matter that the public, the patient, and the Medical Director would all best have their purposes served by not granting a parole to a patient in this situation. The alternatives under both home visitation and under parole status were gone into thoroughly by Counsel and the Medical Director in Chambers. The Court is of the opinion that it would be desirable both from the Court's point of view and from Dr. Sheppard's point of view to know whether or not he has any authority to grant home visitation to those persons committed under Minnesota Statute 631.19, and if so, whether there are any limitations on such authority.

"This Memorandum is made a part of the foregoing Order."

For reasons hereinafter set forth, we decline to answer Question No. 1 and Question No. 2 but answer Question No. 3 in the affirmative.

We do not pass on the question of whether the district court may grant petitioner an outright discharge since that matter is not before us. We do, however, hold that under the statute the court has the authority to grant petitioner a parole on the conditions set forth in the statute, for such time and upon such other and additional terms and conditions as the court may determine and order, notwithstanding the failure of the medical director of the security hospital to certify without qualification that petitioner is not dangerous to the public. We confine our answer to

the specific proceedings which we here review and do not thereby intend to construe the statute more broadly than the facts of the instant case require.

From the inception of these proceedings it is clear that the lower court was disturbed by the fact that Dr. Sheppard had granted so-called "home visits" for periods up to 10 days without authority from the court. Upon petitioner's motion and over Dr. Sheppard's continuing objection, he was joined as a party respondent. In granting that motion, the court repeatedly stated that the issue in the case was whether Dr. Sheppard had discretion to grant the relief sought without any order of the court. It is clear from the court's preliminary discussion of the matter that he treated home visits as a type of parole which he seemed to feel could be authorized only by compliance with § 631.19, as evidenced by the following colloquy:

"THE COURT: I might ask you, Dr. Sheppard, have you sought any opinion from the Attorney General as to the authority you have, the discretion you have in releasing confined people under this Statute?

"DR. C. G. SHEPPARD: Now, you're talking about these home visits we've been giving him; you're not talking about parole or discharge?

"THE COURT: Yes. Well, a rose by any other name would smell as sweet, and that is part of the problem herein. Regardless of what you call it, do you—

"DR. C. G. SHEPPARD: As far as I know I do have the authority to release them for home visits for periods of time, whatever we decide upon."

The testimony at the hearing centered on whether, from a therapeutic point of view and for the protection of the public, the closer supervision of petitioner afforded by home visits was preferable to the less restrictive supervision inherent in granting a parole. The court deferred decision on the matter, however, and did not address itself to that issue except in an accompanying

memorandum. It was apparently the court's judgment that if the medical director of the security hospital had authority to grant home visits without permission of the court, it might not be necessary to grant the petitioner the parole which he sought. Quite obviously, Question No. 1 and Question No. 2 were drafted with a view to resolving that issue before the court undertook to determine the matter of granting a parole, which was the relief sought by petitioner. At the conclusion of the hearing, the court made this observation:

"THE COURT: I'm going to deny your Motion, Mr. MacGibbon [counsel for the state], on the grounds that there is a question whether or not Dr. Sheppard has authority to grant extended home visitations of the nature contemplated here. There is, also, a question of whether or not I would be usurping his discretion by substituting mine for his. I think that his authority in that regard as far as therapeutic treatment should be delineated and clarified, and I will certify the question to the Supreme Court as important and doubtful. However, Mr. Johnson, I'm going to request that the Supreme Court issue an answer that is not specific to this case, but that is general in nature so that Dr. Sheppard and the Court will have notice of what his authority is and where it ends, and it has been said in the law that it isn't always the specific provision of the law that is important, it's the fact of certainty. You can have a bad rule that gives certainty that gives good results. So, regardless of what their answer is, I think both Dr. Sheppard and the Courts in this State should know just what they can do in regard to the release of patients that have been committed under this Statute, and it will be so certified."

Although Dr. Sheppard has not sought review of the order joining him as a respondent, we note in passing that his objections were well taken. As his counsel stated to the court, this was not a petition for habeas corpus but one for parole in which Dr. Sheppard had no interest or standing after refusing to certify

that petitioner could not be unconditionally released without endangering the public. His function in the release or parole process terminated at that point, and the responsibility thereafter was solely that of the courts. However, in refusing to dismiss Dr. Sheppard from the case at the conclusion of the testimony, the court reiterated that he was a "vital, essential, and necessary party to this proceeding."

None of the parties has questioned Dr. Sheppard's authority to grant home visits. That issue was not litigated. The thrust of the argument made by counsel for the state was simply that home visits were preferable to parole under the statute. Indeed, counsel urged the court—

"* * * to consider the length of duration of home visits to be one of medical judgment. * * * [I]f the conditions that are necessary to insure to Frank Rawland the maximum degree of health that a man with his illness can have and at the same time insure society with the maximum protection that society deserves to have, where this condition is presently in a latent condition, then, let it be in the form of the present legal structure and with the utilization of the home visit rather than the parole."

We therefore hold that the only issue before the lower court which was raised by the parties and on which the court had a responsibility to pass was whether, in the judgment of the court, petitioner had satisfied the statutory conditions making him eligible for parole, and, if so, what other terms and conditions were proper and necessary for the protection of the public and for the therapy and control of petitioner's mental illness.[1] Since Question No. 1 and Question No. 2 are not germane to that issue, we decline to respond to them.

The order denying the state's motion for dismissal of the petition is accordingly affirmed, and the matter is remanded for a decision on the merits.

---

[1] Of course there is nothing to prevent the district court from qualifying any parole he may grant with the five conditions of discharge proposed by Dr. Sheppard.